**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARCELLA RICHMAN, individually | ) | |
| and as Special Administrator of the | ) | |
| Estate of Jack B. Richman, deceased, | ) | |
| | ) | |
| Plaintiffs, | ) | No.  98 C 7350 |
| | ) | |
| v. | ) | Judge Joan B. Gottschall |
| | ) | |
| MICHAEL SHEAHAN, in his official capacity | ) | |
| as Sheriff of Cook County, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Marcella Richman, individually and as administrator of the estate of her deceased

son, Jack Richman, has brought suit against Michael Sheahan in his official capacity as Cook

County Sheriff ("the Sheriff") and against eighteen sheriff's deputies in their individual capacities.[1]

Ms. Richman alleges that the defendants are liable for causing her son's death while attempting to

restrain him during a proceeding in Illinois state court.  The defendants have moved for summary

judgment.  For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

**A.     Facts**

On November 18, 1997, Marcella and Jack Richman appeared before Judge Michael S.

---

[1] The court previously dismissed the Department of the Cook County Sheriff as a
defendant.  *See* Minute Order, July 7, 1999.  In addition, the court later dismissed Cook County
as a defendant.  *Richman v. Sheahan*, No. 98 C 7350, 2000 WL 343349, at *2 (N.D. Ill. Mar. 31,
2000).

Jordan in Courtroom E of the Cook County Circuit Court in Skokie, Illinois.  The Richmans were there to challenge a traffic citation that had been issued to Ms. Richman.  Ms. Richman claims that her case was placed at the end of the court call and was eventually continued for a future date.  Because they had waited for some time for their case to be heard, the Richmans began to express displeasure concerning Judge Jordan's handling of Ms. Richman's case.  Judge Jordan initially allowed the Richmans to speak; eventually, however, he told them they would be held in contempt if they did not stop.[2]  Ms. Richman ceased speaking, but Mr. Richman did not.

Because there were no deputies in the room at the time, Judge Jordan pressed the "panic alarm" located on his bench.  Two deputies thereafter approached Mr. Richman, who weighed nearly five hundred pounds, and asked him to accompany them to the lockup area.  When Mr. Richman

---

[2] There is some ambiguity in the plaintiff's position regarding whether, or perhaps at what point, Mr.  Richman was actually found to be in contempt.  At one point in her opposition brief, plaintiff claims that Mr.  Richman was a "free citizen" and that his arrest was "ongoing" at the time of his encounter with the deputies.  *See* Pl.'s Mem. Opp. Defs.' Mot. Summ. J. at 19.  However, plaintiff never advances any argument as to why Mr.  Richman must be regarded as a "free citizen" at the time of the events in question, and never directly addresses the contention that Judge Jordan had found Mr.  Richman in contempt.  Plaintiff also claims that Judge Jordan's threat of contempt was *initially* directed only to Ms. Richman, *see* Pl.'s 56.1 Resp. ¶ 6, and that Mr. Richman "apparently belie[ved]" that the order was not initially directed at him.  Pl.'s Mem. Opp. Defs.' Mot. Summ. J. at 6.  But these statements at most indicate only that Mr. Richman did not immediately realize that he had been held in contempt, not that he had not in fact been held in contempt.  Finally, plaintiff also disputes the paragraph of the defendants' Rule 56.1 Statement in which it is asserted that Mr.  Richman was in contempt when Judge Jordan instructed him to "go with the Sheriff." *Id.* ¶ 10.  Unfortunately, plaintiff does not specify the exact basis for her objection; instead, she merely indicates her contention that the statement is not supported by the transcript cited.  *Id.*  In the relevant portion of the transcript, Judge Jordan specifically testifies that Mr. Richman was in contempt when he instructed Mr.  Richman to go with the sheriff.  Dep. of Judge Michael Jordan, Def.'s Ex.  2, Tr.78:13-17.  There is an objection on the record, but the basis for the objection is not made clear.  *Id.*  In any event, plaintiff nowhere raises a direct and unequivocal challenge to the contention that Mr. Richman had been found in contempt.  Indeed, plaintiff elsewhere at least tacitly acknowledges that Mr. Richman was in contempt.  Pl.'s Mem. Opp. Defs.' Mot. Summ. J. at 41.  Hence, the court does not understand plaintiff to contest the fact that Mr. Richman had been held in contempt.

refused to comply, Judge Jordan said "Unless you step in there, I will give you thirty days." Richman still refused to comply. Judge Jordan ordered Mr. Richman to step into the lockup several more times, and Mr. Richman continued to refuse. With each refusal, Judge Jordan increased the penalty, until finally Mr. Richman had been given 120 days. When one the deputies approached Mr. Richman and asked him to come with him, Mr. Richman held onto the podium and refused to let go. The two deputies then tried unsuccessfully to pry Mr. Richman's hands from the podium and to put his arms behind his back.

As these events were unfolding, Ms. Richman began screaming and waiving her cane in the courtroom. Three female deputies pulled Ms. Richman out of the courtroom, pushed her against the wall, and grabbed her cane. Ms. Richman attempted to reenter the courtroom, but was blocked by another deputy. The female deputies then "shoved" Ms. Richman into a wheelchair, "ran" her down the hall, and "thrust" her inside another courtroom. The parties dispute whether Ms. Richman told the deputies that if anything happened to her son, she would "come back and kill everyone." Pl.'s 56.1 Resp. ¶ 35.

A short time later, twelve additional sheriff's deputies entered Courtroom E in response to a radio call. At this point, the parties' stories diverge: Ms. Richman claims that Mr. Richman was resisting passively and that all fourteen deputies attacked her son, forced him face down on the floor, and attempted to handcuff him. She claims that during the attack, two or three deputies sat or knelt on Mr. Richman's back, causing Mr. Richman to gasp for air, complain of pain, and exclaim that he could not breathe. Defendants claim that Mr. Richman actively resisted by kicking, screaming, and "thrashing around." They also deny that any of the deputies ever struck Mr. Richman or sat on his back or rear end.

It is undisputed, however, that sometime after he had been handcuffed, but while he remained face down on the floor, one or more of the deputies noticed that Mr. Richman had urinated and defecated on himself, and that one of the defendants, a sheriff's lieutenant, remarked, "Look at him, he peed his pants." Defs.' 56.1 Resp. ¶ 23. It soon became clear that Mr. Richman had turned blue. Emergency assistance was called, and several paramedics entered the courtroom. Mr. Richman showed no vital signs. The paramedics performed CPR and took Mr. Richman to the hospital, where he was officially pronounced dead. The parties dispute whether the results of autopsies later performed on Mr. Richman indicated signs of excessive force.

### B. Procedural History

Ms. Richman filed the instant suit on behalf of herself and Mr. Richman in November 1998. An amended complaint was filed in May 1999. Count I of the amended complaint alleges that the sheriff's deputies are liable under 42 U.S.C. § 1983 ("section 1983") for violating Mr. Richman's right to be secure against unreasonable searches and seizures under the Fourth and Fourteenth Amendments. In Count III, Ms. Richman alleges that the sheriff's deputies are liable under section 1983 for violating her own Fourth and Fourteenth Amendment rights. Counts II and IV seek to hold the Cook County Sheriff liable under section 1983 for failure to instruct, supervise, and control the sheriff's deputies with respect to the use of excessive force. Finally, in Counts V and VI, Ms. Richman alleges that all of the defendants are liable for compensatory and punitive damages under Illinois' Wrongful Death Act, 740 ILCS 180/1, and Survival Act, 755 ILCS 5/27-6.

The defendants later moved to dismiss all of plaintiff's claims. In a March 2000 opinion, the court granted the motion in part and denied it in part. *Richman v. Sheahan*, No. 98 C 7350, 2000 WL 343349, at *1 (N.D. Ill. Mar. 31, 2000) ("*Richman I*"). Specifically, the court held that the

deputies were not entitled to absolute immunity, and therefore denied their motion to dismiss plaintiff's section 1983 claims. *Id.* at *2-3. The court also denied the Cook County Sheriff's motion to dismiss on the basis of Eleventh Amendment immunity. *Id.* at *4. Finally, the court denied the defendants' motion to dismiss plaintiff's state law claims insofar as they were asserted against the deputies who seized Mr. Richman, but granted the motion with respect to the Cook County Sheriff and the deputies who seized Ms. Richman. *Id.* at *6-8. The court also dismissed the claims for punitive damages in Counts V and VI. *Id.* at *8.

On appeal, the Seventh Circuit affirmed all of the court's rulings except those pertaining to plaintiff's state law claims. *Richman v. Sheahan*, 270 F.3d 430, 442 (7th Cir. 2001) ("*Richman II*"). In particular, the court concluded that the plaintiff's state law claims should have been dismissed in their entirety because the deputies' alleged conduct was attributable to the state, thus making them immune from suit under the Illinois State Lawsuit Immunity Act, 745 ILCS 5/1. *Id.* After several more years of litigation, defendants filed the present motion for summary judgment.

## ANALYSIS

### I.   Legal Standard

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court must view the record and any inferences to be drawn from it in the light most favorable to the party opposing summary judgment. *See Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir. 1991). The party opposing summary judgment may not rest upon the pleadings, but "must set forth specific facts showing that

there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court will "not weigh the evidence, but '[i]f the evidence is merely colorable, or is not significantly probative' summary judgment is appropriately granted." *Flip Side Prods., Inc. v. Jam Prods., Ltd.*, 843 F.2d 1024, 1032 (7th Cir. 1988) (quoting *Liberty Lobby*, 477 U.S. at 249-50)).

## II.    Excessive Force: Mr. Richman

The court first considers Count I, which alleges that the sheriff's deputies used excessive force in attempting to restrain Mr. Richman. The parties join issue at the threshold over the proper standard to be used in determining whether the deputies' use of force was excessive. Defendants argue that the relevant inquiry is whether the defendants violated Mr. Richman's right to be free from cruel and unusual punishment under the Eight Amendment. Plaintiff urges that the question is whether the deputies violated Mr. Richman's right to be free from unreasonable searches and seizures under the Fourth Amendment. The issue is an important one because excessive force is much more difficult to demonstrate under the Eighth Amendment than the Fourth. Where the Eighth Amendment applies, "plaintiffs in a § 1983 action must establish that prison officials acted wantonly or, stated another way 'maliciously and sadistically for the very purpose of causing harm.'" *Harper v. Albert*, 400 F.3d 1052, 1065 (7th Cir. 2005) (quoting *Wilson v. Seiter*, 501 U.S. 294, 296 (1991)). Where the Fourth Amendment applies, on the other hand, "the relevant inquiry is 'whether the officers' actions [were] objectively reasonable in light of the facts and circumstances confronting them.'" *Smith v. Ball State Univ.*, 295 F.3d 763, 770 (7th Cir. 2002) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

Defendants note that while the Fourth Amendment's reasonableness standard applies where excessive force has allegedly been used in effecting an arrest, *see Graham v. Connor*, 490 U.S. at

394 (citing *Tennessee v. Garner*, 471 U.S. 1, 5 (1985)), the Eight Amendment standard applies to excessive force claims involving convicted prisoners, *see id.* (citing *Whitley v. Albers*, 475 U.S. 312, 318-26 (1986)); *see also Strickland v. Shotts*, 408 F. Supp. 2d 633, 637 (N.D. Ind. 2004) ("It is important to note the distinction between the Fourth Amendment 'excessive force' analysis to be applied in cases like the instant case that concern the arrest of a suspect or the seizure of an individual, as opposed to the Eighth Amendment 'deliberate indifference' standard that applies to prisoners and prohibits cruel and unusual punishment as originally enunciated by the Supreme Court.") (internal citations and quotation marks omitted). Defendants argue that the Eighth Amendment applies to Mr. Richman's excessive force claim because, having been found guilty of criminal contempt and sentenced to 120 days in lockup at the time of the incident in question, Mr. Richman was a convicted prisoner. According to plaintiff, however, the incident in question should be regarded as a garden variety arrest and thus subject only to the Fourth Amendment standard.[3] Plaintiff further argues that the defendants' attempt to invoke the Eighth Amendment is barred by the law of the case doctrine. The court addresses these issues below.

## A.    Law of the Case

The court first considers plaintiff's contention that the defendants' Eighth Amendment argument is foreclosed by the law of the case doctrine. "Under the law of the case doctrine, when

---

[3] Each party has adopted the somewhat imprudent strategy of offering no argument in the alternative. Plaintiff confines herself to disputing the Eighth Amendment's application to the present case and to arguing that Mr. Richman's rights were violated under the Fourth Amendment. With the exception of a passing reference relegated to a footnote, *see* Pl.'s Mem. Opp. Defs.' Mot. Summ. J. at 28 n.12, she makes no attempt to argue that the defendants' conduct constituted excessive force in the event that the Eighth Amendment should be found to apply. Similarly, defendants devote their briefing exclusively to arguing that the deputies' conduct did not constitute excessive force under the Eighth Amendment; they make no attempt to dispute whether the deputies' conduct was excessive under the Fourth Amendment.

a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Moore v. Anderson*, 222 F.3d 280, 284 (7th Cir. 2000) (citing *United States v. Thomas*, 11 F.3d 732, 736 (7th Cir. 1993)) (internal quotation marks omitted). Plaintiff contends that the court's earlier decision in *Richman I* regarding the defendants' motion to dismiss, together with the Seventh Circuit's opinion in *Richman II* addressing the court's decision on appeal, establish the Fourth Amendment standard as the one applicable to the case. Plaintiff also argues that the Fourth Amendment standard constitutes the law of the case because the defendants' answer specifically admits that the complaint's claims arise under the Fourth Amendment. Neither of these contentions is persuasive.

First, the decisions in *Richman I* and *Richman II* merely *presupposed* the applicability of the Fourth Amendment to the claims involving Mr. Richman. The issue was never explicitly presented to or decided by either court; nor can either of the decisions be read as having impliedly settled the issue. Hence, neither opinion can be seen as establishing the law of the case with respect to the proper standard to be used in reviewing whether Mr. Richman was subjected to excessive force.

The court also attaches little significance to the paragraph of the defendants' answer in which the defendants supposedly concede that plaintiff's claims arise under the Fourth Amendment.[4] In

---

[4] The complaint also alleges that the claims are cognizable as a violation of Mr. Richman's substantive due process rights under the Fourteenth Amendment. However, because plaintiff's claims are covered by other, more specific constitutional provisions, she is precluded from resorting to a theory of substantive due process. *See, e.g.*, *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.") (quoting *United States v. Lanier*, 520 U.S. 259, 272, n. 7 (1997)); *Brokaw v. Mercer County*, 235 F.3d 1000, 1017 (7th Cir. 2000) ("[S]ubstantive due process should not be called upon when a specific constitutional provision protects the right allegedly infringed upon.").

relevant part, the answer reads:

> 1.        This action arises under the Constitution of the United States, particularly the Fourth and Fourteenth Amendments to the Constitution of the United States, and under the laws of the United States, particularly the Civil Rights Act, 42 U.S.C. Section 1983 and under the laws of Illinois particularly 740 ILCS 180/0.01, et seq., and 755 ILCS 5/27-6.
>
> ANSWER: Defendants admit the allegations of paragraph (1).

Defs.' Answer ¶ 1. The defendants' answer here is merely a perfunctory acknowledgment of the plaintiff's contention that her claims arise under the Fourth Amendment; it does not constitute a binding admission that the plaintiff's claims are indeed viable under the Fourth Amendment. *Cf. Bock v. Nat'l R.R. Passenger Corp.*, No. 87 C 7495, 1989 WL 65036, at *1 (N.D. Ill. June 8, 1989) (first paragraph of defendant's answer, which admitted that the action arose under the Federal Employers Liability Act, was "nothing more than a recognition that plaintiff has met the jurisdictional requirements of Rule 8(a) of the Federal Rules of Civil Procedure."). The court therefore rejects plaintiff's argument that the Fourth Amendment constitutes the law of the case as to the excessive force claim involving Mr. Richman.

### B.      Additional Considerations

Having concluded that defendants' attempt to invoke the Eighth Amendment is not barred by the law of the case doctrine, the court considers the parties' substantive arguments concerning whether the Eighth Amendment or the Fourth Amendment should apply. As already indicated, the pivotal issue is whether Mr. Richman is to be considered a convicted prisoner at the time of the events in question. It is true that Mr. Richman had not been tried, convicted, and sentenced in the usual sense of those terms. Nevertheless, he had been found in criminal contempt by Judge Jordan, and Judge Jordan had imposed a sentence on Mr. Richman. Although the events transpired rapidly,

there is no reason to think that Judge Jordan's actions were improper or invalid. The Supreme Court has held, for example, that a summary adjudication of criminal contempt for conduct occurring before a judge does not offend due process. *See Sharp v. Kelsey*, 918 F. Supp. 1115, 1122 (W.D. Mich. 1996) (citing *Fisher v. Pace*, 336 U.S. 155 (1949) and *In re Oliver*, 333 U.S. 257, 275 (1948)).

The parties have not cited any case authority involving facts similar to those at issue here. The cases that the court has been able to find, however, support defendants' position. In *Qader v. New York*, 396 F. Supp. 2d 466 (S.D.N.Y. 2005), for example, the plaintiff's son appeared before a New Rochelle City Court judge. *Id.* at 468. When his case was called, a fight broke out between the plaintiff's son and three police officers. *Id.* After the plaintiff began shouting, she was handcuffed by an officer, who brought her before the judge and insisted that she be arrested. *Id.* The Judge directed plaintiff to apologize for her disruptive behavior. *Id.* When she refused, the judge held plaintiff in criminal contempt and "booked" her for ten days in the county jail. *Id.* The officer then forcibly removed the plaintiff from the courtroom, pulling her by the ponytail, beating her, and threatening to put her face in a toilet bowl. *Id.* Afterward, the police department refused to take her to the hospital. *Id.* Plaintiff alleged that she suffered injuries from the incident and brought a claim under section 1983. *Id.* The court held that "because plaintiff had already been found guilty of criminal contempt when she came into the custody of the New Rochelle Police Department, her claim for denial of medical treatment must be analyzed under the Eighth Amendment's cruel and unusual punishment clause." *Id.* at 470. The court found that the plaintiff failed to make the necessary showing of excessive force and accordingly dismissed her claim for denial of medical treatment. *Id.* at 470-71.

Similarly, *Sharp v. Kelsey*, 918 F. Supp. 1115 (W.D. Mich. 1996), involved an attorney who became belligerent during an appearance before a state court judge on a custody matter. *Id.* at 1118. When the attorney refused to calm down, the judge summarily found her guilty of criminal contempt, sentenced her to a fine and five days in jail, and ordered the officer present to take her away. *Id.* After escorting her from the courtroom, the officer allegedly shoved Sharp towards a cell. *Id.* A scuffle ensued, during which Sharp alleged that she was struck several times. *Id.* She staggered back into the courtroom, was pulled out, and forced into the cell. *Id.* Although she alleged that the defendants had violated her Fourth, Fifth, Eighth, and Fourteenth Amendment rights, the court held that since she had been convicted of criminal contempt, only the Eighth Amendment applied to her excessive force claim. *Id.* at 1122-23. Specifically, the court reasoned:

> Ms. Sharp was convicted of a crime when Judge Hocking summarily found her guilty of criminal contempt for her contumacious conduct in the courtroom. Criminal contempt is a crime like any other in the sense that it is a violation of the law punishable by fine or imprisonment or both. . . . When Judge Hocking summarily convicted Ms. Sharp of criminal contempt in front of Officer Baird and ordered him to take her to jail, this Court holds that Ms. Sharp was thereafter subject to the protections of the Eighth Amendment and not the Fourth or Fourteenth Amendments. At the moment Judge Hocking completed his order with an officer immediately present, any Fourth Amendment seizure was complete because she was not free to go where she pleased. As far as the defendant officers are concerned, Ms. Sharp was never not in custody. Ms. Sharp was not a suspect, detainee, or fugitive; she was a convicted person in the custody of Officer Baird and the Eaton County Sheriff's Department.

*Id.* (citations omitted).

Plaintiff's arguments against the Eighth Amendment's application are unconvincing. Her chief argument is that the Eighth Amendment applies only after a defendant has been incarcerated. Since Mr. Richman's encounter with the defendants took place in a courtroom, plaintiff contends that Mr. Richman was not incarcerated at the time and that the Eighth Amendment is therefore

irrelevant. This argument appears to rest on a misreading of the Supreme Court's decision in *Ingraham v. Wright*, 430 U.S. 651 (1977), which plaintiff cites for the proposition that it is "only '[a]fter incarceration*, [that] the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" Pl.'s Mem. Opp. Defs.' Mot. Summ. J. at 20 (quoting *Ingraham*, 430 U.S. at 670). Plaintiff's italicization notwithstanding, the quoted passage merely describes what conduct the Eighth Amendment prohibits in the incarceration context. It does not suggest that the Eighth Amendment applies only after incarceration.

The court concludes that, having been held in contempt and sentenced, Mr. Richman was a prisoner at the time of the incident in question and that the question whether the defendants used excessive force in subduing Mr. Richman must consequently be analyzed under the Eighth Amendment.

### C.    Qualified Immunity

Defendants argue that plaintiff's excessive force claim fails as to Mr. Richman because they are entitled to qualified immunity. "Under the qualified immunity doctrine, government officials performing discretionary functions are shielded from civil damages liability as long as their actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Walsh v. Mellas*, 837 F.2d 789, 801 (7th Cir. 1988) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In determining whether the defendants are entitled to qualified immunity, the court must first ask whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants violated a constitutional right. *Payne v. Pauley*, 337 F.3d 767, 775 (7th Cir. 2003) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If so, the court must then ask whether the right was clearly established at the time of the alleged injury. *Id.*

-12-

(citing *Saucier*, 533 U.S. at 201). "The relevant inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation the officer confronted." *Id.* at 775-76 (citing *Saucier*, 533 U.S. at 202). In making an assessment of qualified immunity in the context of summary judgment, the nonmovant's version of disputed facts must be taken as true. *See Miller v. Lewis*, 381 F. Supp. 2d 773, 781 (N.D. Ill. 2005).

### 1. Whether Mr. Richman's Eighth Amendment Rights Were Violated

The first question is whether Mr. Richman's Eighth Amendment rights were violated. As the Seventh Circuit has noted, the "test in eighth amendment excessive force cases has been well settled for a number of years: whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hill v. Shelander*, 992 F.2d 714, 718 (7th Cir. 1993) (internal quotation marks omitted). The Seventh Circuit has identified a number of factors that are relevant in making this determination, "including the need for the application of the force, the amount of force applied, the threat an officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury that force caused to an inmate." *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004). In order to survive a motion for summary judgment, the prisoner must have evidence that will support a reliable inference of wantonness in the infliction of pain. *Id.* (citing *Whitley v. Albers*, 475 U.S. 312, 322 (1986)). The "quantum of force required for a constitutional violation is that which is 'repugnant to the conscience of mankind.'" *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 10 (1992)).

Defendants argue that no triable issue of fact exists as to whether Mr. Richman's Eighth Amendment rights were violated. The court disagrees. Indeed, virtually all of the factors cited in *Fillmore*—the need for the application of the force, the amount of force applied, the threat the

-13-

deputies reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury that force caused to Mr. Richman—are in dispute here. The parties disagree, for example, over whether Mr. Richman was resisting passively or whether he was waving his cane and "thrashing around." *See* Pl.'s 56.1 Resp. ¶¶ 46-50; Defs.' 56.1 Resp. ¶¶ 14, 15, 58. There is also disagreement over whether and to what extent the deputies viewed Mr. Richman as a threat. *See* Defs.' 56.1 Resp. ¶ 57. Similarly, issues of fact exist concerning the amount of force used in subduing Mr. Richman. It is undisputed that Mr. Richman was forced to the floor, face down, with his face wedged up against a table. *See* Defs.' 56.1 Resp. ¶ 18. The parties disagree, however, in their respective characterizations of how violently these actions were carried out. There is also evidence in the record that certain of the officers knelt on Mr. Richman's back and shoulder, *see* Pl.'s 56.1 Resp. ¶ 66; Defs.' 56.1 Resp. ¶ 21, and that Richman exclaimed during the episode that he couldn't breathe. *See* Defs.' 56.1 Resp. ¶¶ 20, 22.[5] This evidence, taken together with the fact

---

[5] Defendants have moved to strike the paragraphs of plaintiff's Rule 56.1 Statement that contain the allegations concerning Mr. Richman's cries for help. In particular, defendants object that paragraph 20 violates Rule 56.1's requirement that statements be short and concise by "lumping" multiple assertions into a single paragraph. In its entirety, plaintiff's paragraph reads: "Jack moved his head from side to side, and yelled that he couldn't breathe, that his back was hurt, and begged the deputies to "please get off my back." Flat on his belly, Jack was in no position to hit or kick anyone." Pl.'s 56.1 Stmt. ¶ 20 (citations omitted). The court finds that paragraph 20 is sufficiently concise and declines defendants' request that it be stricken. Defendants also object to paragraph 20 on the ground that the sentence "Jack was in no position to hit or kick anyone" is based on "witnesses' beliefs and inferences from others' statements and conduct." Defs.' 56.1 Resp. ¶ 20. Since the court does not rely on the latter statement, defendants' objections to it are moot. Defendants raise roughly the same objections to paragraph 22. Again, the court relies on paragraph 22 only insofar as it relates to Mr. Richman's cries that he could not breathe. To the extent that defendants' objections seek to preclude the court's reliance on Mr. Richman's cries, they are overruled and defendants' motion to strike is denied. To the extent that defendants challenge the statement on other grounds, their motion to strike is denied as moot. The court has considered defendants' objections to other paragraphs in plaintiff's Rule 56.1 Statement on a case-by-case basis. Where defendants' objection is well-taken, the court has not relied on the statement in question; otherwise, the objections are

that the encounter ended with Mr. Richman's death, support a finding that the defendants' use of force was excessive.

The evidence concerning the deputies' state of mind, while somewhat weaker, is still sufficient to survive summary judgment. For example, plaintiff has produced evidence showing a history of antagonism between Mr. Richman and the community. Mr. Richman had been an outspoken member of a group that opposed the spraying of insecticide by the North Shore Mosquito Abatement District ("NSMAD"). *Id.* ¶ 6. Hearings between the group and NSMAD had been held at the very courthouse at issue in this suit, and Mr. Richman had been ejected from the courthouse on previous occasions. Defs.' 56.1 Resp. ¶¶ 4, 6. The group's meetings at the courthouse had been monitored by deputy sheriffs, *id.* ¶ 4, and several of the deputies present during the encounter in question were aware of Richman's activism. *Id.* ¶ 7. It is also undisputed that during the incident, after Mr. Richman had urinated and defecated on himself, one of the defendants remarked, "Look at him, he peed his pants." *Id.* ¶ 23. Viewing the evidence in the light most favorable to plaintiff, a reasonable jury could conclude that the deputies acted maliciously and with an intent to cause Mr. Richman harm when they subdued him. The court therefore concludes that plaintiff can make a showing that Mr. Richman's Eighth Amendment rights were violated.

## 2. Whether Mr. Richman's Rights Were Clearly Established

The court next considers whether Mr. Richman's rights were clearly established. "The inquiry into whether a right is clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition." *Borello v. Allison*, 446 F.3d 742, 750 (7th Cir. 2006) (citing *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)) (internal quotation marks omitted).

overruled and the requests to strike are denied.

A plaintiff must show that a violation of the right in question has been found in factually similar cases or that the violation was so clear that an official would realize he or she was violating the right even in the absence of a case directly on point. *Id.*

Because plaintiff's opposition brief incorrectly assumes that the excessive force claim as to Mr. Richman must be analyzed under the Fourth Amendment, she points to no factually similar cases that might have put defendants on notice that their conduct was violative of the Eighth Amendment. However, the court concludes that a triable issue of fact exists as to whether the violation of Mr. Richman's rights was so clear that the officers should have realized that their conduct ran afoul of the Eighth Amendment. There is undisputed evidence, for example, that Mr. Richman was forced face down on the floor and his head wedged up against a table. There is also evidence that the deputies' conduct prevented Mr. Richman from breathing, and indeed that they persisted in their conduct despite his gasps, his cries for help, and his exclamations that he could not breathe. Taken together with the fact of Mr. Richman's death, such evidence, when viewed in the light most favorable to plaintiff, could allow a jury to conclude that reasonable officers would have understood that they were violating Mr. Richman's Eighth Amendment rights.

Against this, defendants rely heavily on the fact that the deputies were responding to Judge Jordan's orders. Because a judge had ordered them to take Mr. Richman into the lockup, they contend, the deputies could not reasonably have concluded that they were violating Mr. Richman's rights. Surely, this argument is untenable: Judge Jordan merely instructed the deputies to take Mr. Richman into the lockup; his order did not authorize the deputies to carry out the command in any particular fashion. The challenge here is not to conduct specifically ordered by the judge but to the manner in which the judge's order was carried out. *Cf. Richman II*, 270 F.3d at 437 (rejecting

defendants' assertion of quasi-judicial immunity because the plaintiff's claim was "not that the judge ordered the deputies to use unreasonable force, but that the deputies exceeded the judge's order by the manner in which they executed it"). Defendants also cite the lack of evidence that any of the deputies punched, slapped, or kicked Mr. Richman. But punching, slapping, and kicking are not the only kinds of conduct on which Eighth Amendment excessive force claims can be based. The court therefore rejects defendants' contention that they are entitled to qualified immunity.

### D. Joint and Several Liability & Failure to Intervene

While the foregoing analysis indicates that plaintiff may be able to show that Mr. Richman's Eighth Amendment rights were violated, it does not follow that *all of the deputies* are liable for a constitutional violation. As many as fourteen individuals are alleged to have participated in subduing Mr. Richman. The evidence is not entirely clear about exactly who did what or about the degree and kind of contact various individual deputies had with Mr. Richman. In seeking to extend liability to all of the deputies for violating Mr. Richman's rights, plaintiff relies on two theories.

First, plaintiff claims that all of the defendants can be held jointly and severally liable for the alleged violations because they were collectively involved in a course of conduct that violated Mr. Richman's rights. Defendants respond that such a theory is foreclosed by the Seventh Circuit's recent decision in *Harper v. Albert*, 400 F.3d 1052 (7th Cir. 2005). The court agrees. In *Harper*, two prisoners confined in a correctional facility claimed that a team of twelve prison guards and two supervisors violated their Eighth Amendment rights by battering them during a cell-transfer procedure. *Id.* at 1054. The claims against eight of the guards were dismissed after the close of the plaintiffs' case-in-chief under Rule 50(a) of the Federal Rules of Civil Procedure, and the jury found in favor of the five remaining guards at the close of all of the evidence. *Id.* at 1059. The plaintiffs

appealed the court's ruling dismissing the eight guards, arguing that the claims against them should have been allowed to proceed under a theory of joint and several liability. *Id.* at 1061. Affirming the general principle that liability under section 1983 attaches only where a defendant personally caused or participated in the alleged constitutional deprivation, the court held that joint and several liability could apply only if a reasonable jury could have concluded that *all* of the defendants violated the prisoner's Eighth Amendment rights during the cell transfer. *Id.* at 1062. The court noted that the prisoners had failed even to show that they had had physical contact with any of the eight guards and therefore concluded that no reasonable jury could have found that each of the defendants had committed a constitutional violation. *Id.* The court therefore affirmed the lower court's dismissal of the claims against the eight guards in question. *Id.* at 1067.

Here, too, no reasonable jury could conclude that *every one* of the defendants personally treated Mr. Richman with excessive force, for, as in *Harper*, some of the deputies named in Count I are not alleged to have had any physical contact with Mr. Richman at all.[6] The court therefore agrees with defendants that plaintiff cannot hold all of deputies jointly and severally liable for the violation of Mr. Richman's Eighth Amendment rights.

In addition to asserting a joint and several liability theory, however, plaintiff argues that the deputies who themselves did not use excessive force in restraining Mr. Richman may be liable based on their failure to intervene to prevent other deputies from using excessive force. The Seventh Circuit has long recognized that "police officers who have a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's right through the use of excessive force but fail

---

[6] It is undisputed, for example, that Deputy McPhillips never touched Mr. Richman (or Ms. Richman) during the incident. *See* Pl.'s 56.1 Resp. ¶ 43.

to do so" may be held liable for violating the Eighth Amendment. *Harper*, 400 F.3d at 1064 (quoting *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000)).

Defendants' argument against plaintiff's failure-to-intervene theory is too facile: they simply contend that there can be no liability for failing to intervene since plaintiff has failed to establish the underlying constitutional violation. As already indicated, however, plaintiff has survived the first step of the qualified immunity analysis and can make a showing that Mr. Richman's Eighth Amendment rights were violated. Defendants also argue that even if an underlying constitutional violation could be established, the defendants are entitled to qualified immunity because, Judge Jordan having ordered Mr. Richman removed, it would not have been clear to a reasonable officer that he or she had any duty to intervene. Again, the defendants freight Judge Jordan's order with too much significance. The central question is whether any of the officers' conduct was grave enough to violate Mr. Richman's Eighth Amendment rights. If any of the conduct in fact rose to such a level, the fact that Judge Jordan had ordered Mr. Richman removed does not make the need for intervention any the less obvious. The court therefore concludes that those deputies who may not be liable for treating Mr. Richman with excessive force may nonetheless be held liable under a failure-to-intervene theory. [7]

_____

[7] It is true that, in addition to rejecting the plaintiffs' joint-and-several liability theory, *Harper* rejected the failure-to-intervene argument put forth by one of the plaintiffs in that case—once again on the ground that he was unable to single out the specific defendant or defendants who had violated his Eighth Amendment rights:

> [I]n his buckshot approach to this litigation Harper has failed to identify any particular guard, either in his pleadings or through the evidence submitted to the jury at any point during the trial, that used excessive force against him during his transfer. Thus, absent any evidence or even an allegation which could establish a constitutionally cognizable claim for excessive force against any of the defendants ( e.g., identification of the individual guard(s) who used excessive force against him during the transfer procedure) Harper cannot possibly establish

In sum, the court rejects defendants' attempt to invoke qualified immunity and agrees that plaintiff has provided a sufficient basis on which all of the defendants named in Count I might be held liable, either by virtue of their having directly violated Mr. Richman's Eighth Amendment rights or by virtue of their failure to intervene and stop the violations. Accordingly, the court denies

---

bystander liability as to Townley or anyone else for failure to intervene, and his claim must fail.

*Harper v. Albert*, 400 F.3d 1052, 1066 (7th Cir. 2005)

It might be argued that Ms. Richman's failure-to-intervene theory fails too, since even if she could show that one or more of the deputies must have used excessive force against Mr. Richman, she cannot identify which particular deputy or deputies did so. The problem in *Harper*, however, was that the plaintiffs were able to single out only five guards who had even had any physical contact with them. *Harper*, 400 F.3d at 1059-60. While the judge concluded that this was enough to allow the claims against these defendants to proceed, a jury ultimately found that none of the five had in fact used excessive force against the plaintiffs. *Id.* at 1060-61. Indeed, the jury answered special interrogatories specifically stating their conclusion that none of the defendants had used excessive force with respect to either of the plaintiffs. *Id.* Here, by contrast, plaintiff has identified a number of deputies who had physical contact with Mr. Richman and the question as to whether their actions amounted to excessive force has not been decided by a jury. Specifically, it is undisputed that, at the very least, the following defendants had physical contract with Mr. Richman: Deputy Kim, Pl.'s 56.1 Resp. ¶ 25; Deputy Pickell, *id.* ¶ 27; Deputy Sulkin, *id.* ¶ 60; and Deputy Wisch, *id.* ¶ 61. According to defendants' own brief, Deputies Dorner, Gantman, and Velisaris also had physical contract with Mr. Richman. *See* Def.'s Mem. Summ. J. at 11-12. For reasons that are not entirely clear, however, Plaintiff's Rule 56.1 Response agrees with defendants' assertion that Ms. Richman "does not know the names of the Deputy Sheriffs that had contact with Jack Richman." *Id.* ¶ 42.

Importantly, in writing for the panel in *Harper*, Judge Coffey expressly noted that the case's holding turned in key part on the fact that the plaintiffs in *Harper* had brought their motion under Federal Rule of Civil Procedure 50 after having presented their case at trial and lost; he clearly indicated that a different result might have been reached if, as here, the case had involved a motion pursuant to Rule 56:

Although . . . the method of analysis is essentially identical when reviewing the grant of a motion for summary judgment and when reviewing a grant of a motion under Rule 50, they come at different points in the proceedings. Therefore, the disposition of this case may well have been different if we were reviewing a grant of summary judgment and Harper would still have trial to bear out facts supporting his claim; however, after the presentation of his case-in-chief (or during the entire trial) Harper failed to offer any legal basis for a reasonable jury to find that any constitutional violation had occurred.

*Id.*

defendants' motion for summary judgment with respect to Count I.

### III. Excessive Force: Ms. Richman

The court next considers Count III of plaintiff's complaint, which alleges that certain of the defendants used excessive force in removing Ms. Richman from the courtroom. In contrast to the excessive force claim asserted on behalf of Mr. Richman, the parties agree that Ms. Richman's excessive force claim must be analyzed under the Fourth Amendment. Moreover, the relevant facts concerning Ms. Richman's treatment are largely undisputed. The parties agree that while other deputies were attempting to deal with Mr. Richman, three female defendants (accompanied by a fourth) grabbed Ms. Richman and pulled her into the courthouse lobby. Pl.'s 56.1 Resp. ¶ 34. Ms. Richman told one of the deputies that she had had grafting done on her left arm, at which point the deputy released her hold on the left arm. *Id.* ¶ 33. One of the deputies "pushed" Ms. Richman against the wall, "grabbed" her cane, and told her that she was a danger to the deputies. *Id.* ¶ 34. The three female deputies then left and a male deputy stood in front of Ms. Richman to prevent her from reentering the courtroom. *Id.* ¶ 36. When Ms. Richman moved to the left in an attempt to reenter the room, the deputy moved to block her; when she moved to the right, he moved again. *Id.* Two of the deputies then forced or "shoved" Ms. Richman into a wheelchair and wheeled or "thrust" her to another courtroom. *Id.* ¶ 37. After being placed in the other courtroom, Ms. Richman got out of the wheelchair, went to the door, and opened it. *Id.* ¶ 38. It is undisputed that Ms. Richman suffered no physical injuries as a result of the incident. *Id.* ¶ 39. She claims that she suffered emotional injuries but acknowledges that these never manifested themselves in physical symptoms of any sort. *Id.* ¶ 40.

Defendants raise both legal and factual arguments in support of their motion for summary

judgment with respect to Ms. Richman's excessive force claim.  First, they argue that Ms. Richman's Fourth Amendment rights were not violated.  Second, defendants contend that even if a Fourth Amendment violation could be shown, Ms. Richman's claim fails because the deputies are entitled to qualified immunity.

### A.    Fourth Amendment Violation

Defendants first argue that Ms. Richman cannot show that her Fourth Amendment rights were violated.  Ms. Richman's claim founders at the outset, defendants contend, because she cannot show that she was "seized" within the meaning of the Fourth Amendment.  Specifically, defendants note that although Ms. Richman was prevented from entering Courtroom E, she was otherwise free to go wherever she wished.  Such minimal restrictions on personal freedom, they claim, do not constitute a seizure for Fourth Amendment purposes.  In support of their argument, defendants cite the Second Circuit's decision in *Sheppard v. Beerman*, 18 F.3d 147 (2d Cir. 1994), which held that a law clerk who had been fired and removed from a judge's chambers had not been seized under the Fourth Amendment because, although he was not allowed to return to the courthouse, he remained free to go anywhere else he wanted.  *Id.* at 153.  Although the plaintiff fails to respond to this argument, the court notes that the Seventh Circuit has expressly declined to answer the question whether a Fourth Amendment seizure takes place under such circumstances.  *See Spiegel v. City of Chicago*, 106 F.3d 209, 210 (7th Cir. 1997).  The court declines to grant summary judgment on the basis of an argument that is unsupported by case authority in this circuit.

Next, defendants argue that Ms. Richman was not seized within the meaning of the Fourth Amendment because Ms. Richman never yielded to the deputies' display of authority.  Citing the Supreme Court's decision in *California v. Hodari D.*, 499 U.S. 621, 626 (1991), defendants contend

that no seizure occurs for Fourth Amendment purposes where a subject fails to yield or acquiesce to an officer's show of authority. This argument—to which plaintiff also does not directly respond— is somewhat closer to the mark. Defendants have produced evidence suggesting that Ms. Richman refused to yield to the officers' show of authority. Nevertheless, the evidence is sparse and does not clearly establish a complete refusal to yield on Ms. Richman's part. While it is undisputed that Ms. Richman attempted to reenter Courtroom E after having been removed, it is unclear whether she might have acquiesced at some later point. Even if Ms. Richman's attempt to reenter the courtroom is taken as unequivocal evidence of an initial refusal to yield, because that evidence pertains only to one link in a much longer chain of events, a reasonable jury would not be forced to conclude that Ms. Richman *never* yielded. As a result, a reasonable jury could conclude that Ms. Richman was indeed seized under the Fourth Amendment.

Defendants finally argue that, regardless of whether Ms. Richman was in fact seized, no reasonable jury could find that she had been subjected to excessive force. The court disagrees. It is undisputed that Ms. Richman was "grabbed" and "pulled" out of the courtroom, "pushed" against a wall, and "shoved" in a wheelchair. While defendants are surely correct in asserting that "not every push o[r] shove" violates the Fourth Amendment, Def.'s Mem. Supp. Summ. J. at 23, it is unclear just how aggressively Ms. Richman was pushed, pulled, and shoved. When the facts are taken in the light most favorable to Ms. Richman, a jury could conclude, particularly in view of Ms. Richman's age, that the deputies' use of force was excessive. The court therefore rejects defendants' contention that they are entitled to summary judgment on the ground that Ms. Richman's Fourth Amendment rights were not violated.

**B.      Qualified Immunity**

Defendants also briefly argue that, even if Ms. Richman's Fourth Amendment rights were violated, they are still entitled to summary judgment on her excessive force claim because they are protected by qualified immunity.  As noted previously, police officers who use force in making an arrest are entitled to qualified immunity from suits under section 1983 insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Smith v. Darlin*, No. 97 C 0763, 1999 WL 498586, at *3 (N.D. Ill. Jul. 8, 1999) (citing *Rice v. Burks*, 999 F.2d 1172, 1174 (7th Cir. 1993)).  In contrast to the inquiry that must be undertaken in the context of the Eighth Amendment, however, in determining whether a defendant is entitled to qualified immunity for Fourth Amendment violations, the court is "concerned not with the state of mind or good faith of the government actor, but with the 'objective legal reasonableness' of his actions—in other words, with whether a reasonable police officer could have believed that [the officer's] conduct was constitutional 'in light of clearly established law and the information [he] possessed' at the time." *Frazell v. Flanigan*, 102 F.3d 877, 886 (7th Cir. 1996) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639, 641 (1987)).

Defendants claim that the deputies who dealt with Ms. Richman could reasonably have believed that their conduct was constitutional in light of the law and information available to them at the time.  For much the same reason that the court rejected defendants' argument that Ms. Richman's Fourth Amendment rights were not violated, however, the court finds that a material issue of fact remains on this point as well.  Whether the deputies could have reasonably believed that their conduct was constitutional depends in large measure on how aggressively they pushed, pulled, and shoved her.  Done in a sufficiently violent manner, it might have been clear to reasonable

officers that their conduct was unreasonable and unconstitutional. The fact that Ms. Richman sustained no physical injuries, while clearly helpful to the defendants' case, does not conclusively establish that the defendants lacked any notice that their alleged conduct was unconstitutional. The court therefore denies defendants' motion for summary judgment with respect to Count III.

## IV.    Inadequate Training and Supervision

Defendants next seek summary judgment as to Counts II and IV of the complaint, which seek to hold the Cook County Sheriff liable for failing properly to train and supervise deputy sheriffs concerning the use of force. Since plaintiff sued the Sheriff in his official capacity, the claim is against the entity of which the Sheriff is an agent. *See Richman II*, 270 F.3d at 439 (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)). Although the basic requirements for failure-to-train and failure-to-supervise claims are generally the same, different evidence is necessary to support each theory. Accordingly, the court discusses plaintiff's failure-to-train and failure-to-supervise claims separately. *See, e.g.*, *Amnesty America v. Town of W. Hartford*, 361 F.3d 113, 127 (2d Cir. 2004) ("Plaintiffs advance two distinct theories of [the defendant's] deliberate indifference, alleging that he failed to supervise the officers and also that he failed to train them. Because these theories emphasize different facts and require different showings in order to establish deliberate indifference, they must be analyzed independently, rather than evaluated collectively.").

### A.    Failure to Train

A municipality may be held liable under a section 1983 "failure to train" theory only if the plaintiff proves: (1) the municipality's employee violated her constitutional rights; (2) the municipality had a policy or custom of failing to train its employees; and (3) the failure to train caused the constitutional violation. *Roach v. City of Evansville*, 111 F.3d 544, 549 (7th Cir. 1997).

An inadequate training program can be said to represent "city policy" when "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378 (1989)). "Deliberate indifference" may be shown in one of two ways: (1) by failing to train officers to handle a recurring situation that presents an obvious potential for a constitutional violation; or (2) by failing to provide further training after learning of a pattern of unconstitutional violations by its officers. *Dunn v. City of Elgin*, 347 F.3d 641, 646 (7th Cir. 2003). "[B]efore a municipality may be held liable under a 'failure to train' theory, it must first be established that the defendants were on notice of constitutional violations committed by their inadequately trained employees." *Hirsch v. Burke*, 40 F.3d 900, 904 (7th Cir. 1994); *see also Palmquist v. Selvik*, 111 F.3d 1332, 1346 (7th Cir. 1997) ("[B]efore liability can legally attach, the municipality must be on notice of the deficiency, and have a 'high degree of culpability.'") (quoting *Cornfield v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1327 (7th Cir. 1993)); *Trejo v. Vill. of Itasca*, No. 02 C 1193, 2004 WL 2608285, at *14 (N.D. Ill. Nov. 16, 2004).

Ms. Richman cites two sources of evidence in support of her failure-to-train claims. First, she argues that a reasonable jury could infer that the Sheriff had a policy or custom of failing to train the deputies and that the Sheriff's failure to train caused the violation of Ms. and Mr. Richman's constitutional rights purely on the basis of her and her son's encounter with the deputies on the date in question. The court disagrees. Ms. Richman provides no evidence whatsoever relating specifically to the way in which Cook County Sheriff's Deputies are trained (or not trained). Nor has she produced any evidence of previous constitutional violations, let alone evidence that might

establish that the Sheriff was on notice of such violations.

Ms. Richman argues that the deputies' alleged violations of her and her son's rights should not be regarded as a single incident. Rather, she urges, since the encounter involved so many individual defendants, it should be regarded as the "functional equivalent of considerably more than the single prototypical incident." Pl.'s Mem. Opp. Defs.' Mot. Summ. J. at 41. But this argument borders on sophistry: one incident cannot be turned into several simply by virtue of the number of participants involved—particularly where, as here, the events in question transpired within a very short period of time. And even if one were to grant that the encounter with the Richmans amounted to the "functional equivalent" of several incidents, the argument fails to show how the multiple incidents might have provided the Sheriff with notice of previous constitutional violations committed by its employees.

At bottom, plaintiff's argument appears to be that the incident was so egregious, and the deputies' response so inadequate, that a jury could reasonably infer that the municipality was deliberately indifferent when it came to the deputies' training. But if poor training could be inferred solely from bad conduct of the sort alleged here, virtually *any* section 1983 claim would automatically provide the basis for a failure-to-train claim. Such a result would clearly be out of keeping with the Supreme Court's and the Seventh Circuit's pronouncement that failure to train claims are available "only in limited circumstances." *Cornfield*, 991 F.2d at 1327; *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989); *Robles v. City of Fort Wayne*, 113 F.3d 732, 735 (7th Cir. 1997).

The second source of evidence cited by Ms. Richman is the report of Charles Mader

("Mader"), an expert whom she retained to offer opinions regarding the use excessive force.[8] Here, too, however, plaintiff fails to cite any specific evidence relating to training or supervision. On the contrary, plaintiff cites only Mader's opinion that the defendants used excessive force in dealing with the Richmans. Nor was the court able to find anyplace else in his report where Mader opined on the adequacy of the deputies' training. While Mader does refer to training materials in his report, he does so only in order to point out where certain deputies failed to follow the materials. Indeed, in his deposition, Mader specifically admitted that he "saw no problem with the Cook County Sheriff's Office training." *See* Pl.'s Ex., Mader Dep., 168: 2-10.

In short, plaintiff has failed to come forward with evidence from which a reasonable jury could find either deliberate indifference on the Sheriff's part or that the Sheriff had a policy or custom of failing to train deputies. Consequently, the court grants the defendants' motion for summary judgment as to Counts II and IV insofar as those counts are premised on a failure-to-train theory.

### B.     Failure to Supervise

As already indicated, the basic elements of a section 1983 failure-to-supervise claim are the same as those necessary to show a failure-to-train claim. To establish section 1983 liability against supervisors, the plaintiff must show that: (1) the Sheriff failed to supervise or train the officers; (2) a causal connection existed between the failure to supervise or train and the violation of the

---

[8] At various places in their response to plaintiff's Rule 56.1 Statement, defendants ask the court to disregard Mader's report because its analysis presupposes that the Fourth Amendment rather than the Eighth Amendment applies to Mr. Richman's excessive force claim. However, the court does not understand the defendants' objection as applying to Mader's opinions regarding the separate issue of training. In any event, any concern over Mader's report on this point is rendered irrelevant in light of the court's finding that the report does not preclude summary judgment in defendants' favor.

plaintiff's rights; and (3) the failure to supervise amounted to deliberate indifference to the plaintiff's constitutional rights. *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005) (citing *City of Canton v. Harris*, 489 U.S. 378 (1989)).

The evidence plaintiff cites in support of her failure-to-supervise claim is largely the same as that marshaled in support of her failure-to-train claim. Just as that evidence is insufficient to support plaintiff's failure-to-train claim, it is also insufficient to withstand a motion for summary judgment with respect to her failure-to-supervise claim. There is only one additional piece of evidence in support of plaintiff's failure-to-supervise claim: the fact that, during the incident, "three supervisors stood by (with at least one mocking Jack Richman) while fourteen deputy sheriffs swarmed Jack Richman, made physical contact with him and killed him." Pl.'s Mem. Opp. Defs.' Mot. Summ. J. at 41-42.[9] Plaintiff refers here to Sergeant Maurice Smith and Lieutenant Kelly Jackson, both of whom, according to plaintiff, simply observed as events unfolded in the courtroom and did not intervene. Plaintiff "maintains that a reasonable jury could infer from this conduct <u>both</u> that the supervisors themselves were deliberately indifferent to their responsibility to prevent the use of force against a non-dangerous, non-threatening persons [sic] in courtrooms held in contempt, <u>and</u> that the Sheriff was deliberately indifferent in his supervision of all of the defendants, including the supervisors." *Id.* at 42.

This argument ultimately fares no better than plaintiff's argument in support of her failure-to-train claim. Reduced to its essence, plaintiff's argument is that because Smith and Jackson engaged in poor supervision, they, too, must have been poorly supervised. The inferential leap here is simply

---

[9] There is conflicting evidence about whether a third individual, identified only as "Chief Zerfass" was also present in a supervisory capacity in the courtroom at the time. Whether Zerfass was present during the events in question does not affect the court's analysis.

too large.  Plaintiff adduces no specific evidence concerning the Sheriff's supervisory practices in general, nor any evidence concerning his supervision (or lack thereof) with respect to Smith and Jackson in particular.[10]

In short, the Cook County Sheriff cannot be held liable pursuant to section 1983 under either plaintiff's failure-to-train theory or her failure-to-supervise theory.  Consequently, defendants' motion for summary judgment as to Counts II and IV is granted.

## V.     Loss of Society

Finally, in Count V of her complaint, Ms. Richman asserts a claim for loss of society.  As noted above, the Seventh Circuit held that Ms. Richman's state law claims against the deputies were barred by the Illinois State Lawsuit Immunity Act, 745 ILCS 5/1.  The defendants now seek summary judgment with respect to Count V insofar as it seeks to assert a claim for loss of society based on section 1983.[11]  Defendants argue that any such claim must fail in light of the Seventh Circuit's decision in *Russ v. Watts*, 414 F.3d 783 (7th Cir. 2004).  The court agrees.

In *Russ*, the court expressly overruled its earlier decision in *Bell v. City of Milwaukee*, 746 F.2d 1205, 1244-45 (7th Cir. 1984), which held that section 1983 provided parents with a cause of action for the loss of the society and companionship.  After noting that virtually all of the Federal Courts of Appeals had reached the opposite conclusion, *Russ* held that there is no "constitutional

---

[10] Mader's report indicates that Sergeant Smith and Lieutenant Kelly failed to exercise proper supervision during the incident.  However, the report says nothing about supervision by the Cook County Sheriff.  *See* Mader Report, Pl.'s Ex. 13, at 11-13.

[11] Defendants argue that Count VI should also be dismissed because it is no longer clear what remains of the claim after the Seventh Circuit's decision.  Plaintiff has not contested defendants' argument on this point.  Accordingly, the court grants defendants summary judgment as to Count VI.

right to recover for the loss of the companionship of an adult child when that relationship is terminated as an incidental result of state action." *Russ*, 414 F.3d at 791. Rather, to state a claim under section 1983, there must be "intentional action by the state to interfere with a familial relationship." *Id.* at 790. The court also noted that "although we need not impose an absolute rule that parents of adult children lack any liberty interest in their relationship with their children, we agree with our sister circuits that minor children's need for the guidance and support of their parents warrants 'sharply different constitutional treatment.'" *Id.* (quoting *Butera v. District of Columbia*, 235 F.3d 637, 656 (D.C. Cir. 2001)).

Under *Russ*, therefore, Ms. Richman can survive defendants' motion for summary judgment only if she is able to cite evidence from which a reasonable jury could conclude that defendants' conduct was intentionally directed at terminating the parent-child relationship. The evidence on which Ms. Richman relies consists of three facts: (1) she and her son were together in the courtroom at the time the deputies allegedly used excessive force; (2) at least some of the defendants were aware of the familial relationship between Ms. Richman and her son; and (3) "the challenged conduct of the defendants in seizing plaintiff's son and using force against him in her presence was intentional." Pl.'s Mem. Opp. Pl.'s Mot. Summ. J. at 38.

Even viewing all of the facts and drawing all inferences in plaintiff's favor, these considerations simply do not provide a basis from which a reasonable jury could conclude that the defendants' conduct was intentionally and specifically directed at terminating the Richmans' parent-child relationship. The court cannot agree that the mere physical proximity between Ms. Richman and her son at the time of incident, or the defendants' mere awareness of the Richmans' parent-child relationship, supports an inference that the defendants intended specifically to interfere with their

parent-child relationship. And plaintiff's third argument amounts to little more than wordplay: from the fact that defendants intentionally used force in *seizing Mr. Richman* it does not follow that the defendants intentionally interfered with the Richmans' *parent-child relationship*. Hence, to the extent that Count V purports to assert a claim for loss of society based on section 1983, the defendants are entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is denied as to Counts I and III, which assert excessive force with respect to Mr. Richman and Ms. Richman, respectively. Defendants' motion for summary judgment is granted as to plaintiff's failure to supervise claims in Counts II and IV, and as to Count V insofar as it asserts a claim for loss of society based on section 1983.

ENTER:

\_\_\_/s/_____
Joan B. Gottschall
United States District Judge

Dated: February 2, 2007