UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARCELLA RICHMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 98 C 7350 |
| | ) | |
| v. | ) | Judge Joan B. Gottschall |
| | ) | |
| BRIAN BURGESON, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Marcella Richman (the "plaintiff" or "Ms. Richman"), as administrator of the estate of her deceased son, Jack Richman, has brought suit against Michael Sheahan in his official capacity as Cook County Sheriff and against eighteen sheriff's deputies in their individual capacities. Ms. Richman alleges that the defendants are liable for causing her son's death while attempting to restrain him during a proceeding in Illinois state court. This case has been to the Seventh Circuit twice. The most recent appeal was decided on January 7, 2008. The case is now set for trial and the defendants have filed fourteen pre-trial motions *in limine*. For the following reasons, motions *in limine* nos. 6, 7, 11 and 13 are granted, motions nos. 2, 5, 8, 9, and 10 are denied, motions nos. 3, 4 and 14 are granted in part and denied in part, and motions nos. 1 and 12 remain under advisement.[1]

### ANALYSIS

As an initial matter, the court notes that the defendants frequently present arguments as to the admissibility of evidence only under the Fourth Amendment. Unfortunately, as the plaintiff points out, this renders their arguments incomplete. Pursuant to the Seventh Circuit's most

---

[1] All motions *in limine* are necessarily decided without prejudice. As the evidence unfolds at trial, the parties are free to raise the motions or objections again as appropriate.

recent order, the plaintiff may present evidence in support of *both* Fourth Amendment *and* Eighth Amendment claims and it is up to the jury to determine which constitutional provision applies. *See* 512 F.3d 876, 882-83 (7th Cir. 2008) ("[W]hen, as in this case, it is uncertain whether the act complained of is punishment, deciding which remedy is available must wait upon the determination of the facts."). Thus, the court has considered the merits of defendants' motions as they relate to claims under both the Fourth Amendment and the Eighth Amendment.

A.  **Motion *In Limine* No. 1 To Exclude Testimony of Charles Mader [158]**

The defendants seek to bar any opinion testimony from Charles J. Mader regarding the use of force by the defendants, and specifically from referencing the Cook County Sheriff Department's general orders, training materials, policies, procedures, and use of force paradigm. They argue that such testimony is irrelevant to a Fourth Amendment claim, does not satisfy the requirements of Rule 702 and *Daubert*,[2] and its probative value is outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 401; *id.* 403; *id.* 702; *Thompson v. City of Chicago*, 472 F.3d 444 (7th Cir. 2006) (upholding the district court's grant of a motion *in limine*, in a Fourth Amendment case, barring presentation of evidence concerning police general orders because they were irrelevant to the jury's determination of the reasonableness of the officer's actions).

The plaintiff retorts that the defendants' own experts rely on the very same material that the defendants are seeking to bar the plaintiff from offering and that Judge Cole has already determined its admissibility. *See Richman v. Sheahan*, 415 F. Supp. 2d 929, 935 (N.D. Ill. 2006) (observing that expert Bowman reviewed Police Training Institute materials); *id.* (noting that expert Johnson reviewed "various law enforcement training materials and guidelines"); *id.* at 937

---

[2] *Daubert v. Merrell Dow Pharmacy, Inc.*, 509 U.S. 579 (1993), requires trial courts to ensure that expert opinions have a reliable basis, are grounded in scientific methods and procedures, and will assist the trier of fact. *Id.* at 589-95.

2

(stating that expert Marsh reviewed "several Cook County Sheriff's Department training bulletins and general orders"). Ms. Richman also argues that the material is relevant to her Eighth Amendment claims. In reply, the defendants assert that Judge Cole's opinion is distinguishable because it was decided before *Thompson* and concerned different expert testimony. The defendants do not reply to the plaintiff's Eighth Amendment argument or explain why *Thompson* does not equally apply to their own experts' testimony on policies and training materials.

The court is unable to decide the motion absent information on what evidence the defendants plan to offer concerning general orders, policies, or training procedures. Also, although the court sees little reason to be concerned with the qualifications of Mr. Mader or the reliability of the methods underpinning his opinions, it is concerned that the plaintiff fails to address the defendants' *Daubert* challenge in any meaningful way. Finally, the court requires additional argument on how such expert testimony will assist or hinder the jury in its determination of whether the defendants acted to punish, which is a key factual question identified by the Seventh Circuit in this case and which was not at issue in *Thompson*. *See Richman*, 512 F.3d at 883. Therefore, the motion remains under advisement pending additional argument.

**B.  Motion *In Limine* No. 2 To Bar Certain Testimony of Irene Libman [159]**

The defendants seek to bar Irene Libman from testifying that defendant Kelly Jackson said, in regard to Jack Richman, "look at him, he peed in his pants."[3] They argue that this statement is irrelevant to a Fourth Amendment claim and is unduly prejudicial. *See* Fed. R. Evid.

---

[3] The parties disagree about the exact words used. *Compare* Defs.' Mot. in Limine No. 2 (quoting "look at him, he peed in his pants"), *with* Pl.'s Resp. at 9 ("Look at him, he peed his pants.").

401; *id.* 403; *Lester v. City of Chicago*, 830 F.2d 706, 712 (7th Cir. 1987) (noting that the Fourth Amendment standard "calls for objective analysis without regard to the officer's underlying intent or motivation"). However, such a statement is relevant to an Eighth Amendment claim because it tends to show defendant Jackson's state of mind. *See Richman*, 512 F.3d at 881 (observing that proof of state of mind is necessary where "the classification of an act as punishment is ambiguous"). Because the evidence is relevant for this purpose, the court does not reach the plaintiff's argument regarding its relevance to show failure to intervene. The motion is denied.

C.  **Motion *In Limine* No. 3 To Exclude Testimony Regarding Hedonic Damages And Any Loss Of Society or Companionship To Marcella Richman [160]**

The defendants move to exclude the opinion testimony of Dr. Stan V. Smith ("Dr. Smith") on hedonic damages[4] and on economic loss to Ms. Richman as a result of Jack Richman's death. They argue that Dr. Smith's opinions, which are based on a "willingness to pay" methodology, fail to satisfy the requirements of Rule 702, *Daubert,* and Rule 403. They also contend that any testimony on Ms. Richman's losses is inappropriate given that her claims for loss of society and companionship have been dismissed.

A review of Dr. Smith's opinion reveals that he provides opinions on three types of damages: (1) the loss of replacement household and family services; (2) the loss of the value of life; and (3) the loss of society or relationship sustained by Jack Richman's surviving family. Smith Report at 1 (Apr. 11, 2005). Since Dr. Smith prepared the report, several claims have been dismissed such that now only claims on behalf of Jack Richman's estate are being tried.

---

[4] "Hedonic damages," also known as "loss of the value of life" damages and "loss of enjoyment of life" damages, recognize that "life is valued at more than the lost earnings capacity" and provide a monetary estimate for the lost value of life's intangible pleasures. Smith Report at 4. According to Dr. Smith, the value of life for a "statistically average person" is $3.7 million (in 2005 dollars). Smith Dep. 35:21.

4

Therefore, any opinion testimony on the value of the loss of society and companionship or replacement services (opinions nos. 1 and 3) is inadmissible. At most, Dr. Smith may testify about the loss of the value of life: hedonic damages suffered by Jack Richman himself (opinion no. 2).

The defendants rely, in part, on *Mercado v. Ahmed*, 974 F.2d 863 (7th Cir. 1992), where the Seventh Circuit upheld a district court's ruling, pursuant to Rule 702, that Dr. Smith's proposed testimony on hedonic damages was inadmissible. *Mercado*, 974 F.2d at 869. The court complimented the district court's "thorough and scholarly explanation of the reasoning supporting this decision." *Id.* (citing *Mercado v. Ahmed*, 756 F. Supp. 1097 (N.D. Ill. 1991) (Zagel, J.)). It noted that the district court determined that "no consensus existed among economists as to what was proper evidence of the value of living." *Id.* at 870. However, the district court's "more significant concern" was that Dr. Smith's methodology did not pass muster under Rule 702 because the evidence was "founded on [a] consensus . . . of persons who are no more expert than are jurors on the value of life." *Id.* (quoting *Mercado*, 756 F. Supp. at 1103). The Seventh Circuit found the district court's first criticism to be "irrefutable" and the second concern to be "on the mark." *Id.* at 871.

As the plaintiff correctly points out, the Seventh Circuit also said that it could not "state conclusively that [Dr.] Smith's approach is devoid of any merit." *Id.* However, the court expressed "serious doubts about [Dr. Smith's] assertion that the studies he relies upon actually measure how much Americans value life." *Id.* Thus, at best, the court was ambivalent about the value of Dr. Smith's testimony.

It has been seventeen years since Dr. Smith's opinions were offered in *Mercado*, a case which pre-dates *Daubert*. Although one may expect to see a development of a scientific theory

over such a stretch of time, no evidence of this has been presented. *See* Smith Report at 9-12 (citing peer-review studies and articles indicating "general acceptance" of the theories that were published, for the most part, in the 1980s and early 1990s).

The plaintiff contends that *Mercado* does not bar the court from exercising its discretion to admit Dr. Smith's testimony and cites *Sherrod v. Berry*, 827 F.2d 195 (7th Cir. 1987),[5] in support of this contention. In *Sherrod*, the court concluded that Dr. Smith's testimony was admissible where § 1983 "permits recovery on behalf of the victim's estate for the loss of life," and Dr. Smith "testified as to how a life is valued in the field of economics." *Id.* at 205. The court rejected the defendants' contention that admission of the expert testimony was in error because the damages were too speculative, in part because the defendants did not submit contrary expert testimony. *Id.* In closing, the court observed that "[t]he testimony of expert economist [Dr.] Smith was invaluable to the jury in enabling it to perform its function of determining the most accurate and probable estimate of the damages recoverable for the hedonic value of [the plaintiff's] life." *Id.* Thus, the Seventh Circuit has acknowledged the usefulness of testimony on hedonic damages, but this does not absolve the district court of its *Daubert* responsibilities.

Dr. Smith states that testimony on hedonic damages "has been admitted in over half the states in over 165 trials nationwide." Smith Report at 5; *see* Ex. 3 to Report (breaking down the number of cases by state). Unfortunately, he provides no post-*Daubert* case citations. Nor does the plaintiff. The majority of cases uncovered by the court hold that the testimony is inadmissible under either Rule 702 or *Daubert*. *See also* 5 David L. Gaigman et al., Modern Scientific Evidence § 43:3 (2007) (("Most attempts to offer economic damages on the issue of

---

[5] As the *Mercado* opinion points out, *Sherrod* was vacated, 835 F.2d 1222 (7th Cir. 1988), then reversed *en banc* on other grounds, 856 F.2d 802 (7th Cir. 1988). *Mercado*, 974 F.2d at 870 n.5.

6

hedonic damages are . . . rejected by courts."). Several cases in this district have barred Dr. Smith's expert testimony on hedonic damages. *See, e.g.*, *Ayers v. Robinson*, 887 F. Supp. 1049, 1064 (N.D. Ill. 1995) (Shadur, J.) (ruling, after an extensive analysis of the methodology involved, that Dr. Smith's testimony "failed to survive *Daubert* analysis"). *But see White v. Gerardot*, 05 CV 382, 2008 WL 2338307, at *6 (N.D. Ind. June 4, 2008) (holding, on summary judgment, that an estate was legally entitled to seek hedonic damages where the claim rested on violations of § 1983). Judge Shadur's *Ayers* opinion has been positively cited in numerous other cases dealing with this issue, in this district and nationwide. *See, e.g.*, *Crespo v. City of Chicago*, 96 C 2787, 1997 WL 537343, at *3 (N.D. Ill. Aug. 22, 1997) (Kocoras, J.) (provisionally granting a motion to bar the testimony on hedonic damages because "like Judge Shadur, we are unconvinced that the theory is helpful to the jury"). Given the apparent lack of change in Dr. Smith's methodology, the thoughtful and detailed *Daubert* analysis in *Ayers* remains on-point. *See Ayers*, 887 F. Supp. at 1059-64 (addressing five principal parts of Dr. Smith's calculation: benchmarks, adjustments, pedigree, empirical data, and underlying assumptions).

Nevertheless, the court is unwilling to go so far as to say that nothing in Dr. Smith's report is admissible, especially when the Seventh Circuit allows hedonic damages for § 1983 claims. The Tenth Circuit approved a more nuanced approach to expert testimony on hedonic damages in *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235 (10th Cir. 2000). The district court had barred testimony on the amount of hedonic damages because it would be "both unhelpful and confusing to the jury," but had allowed Dr. Smith to "testify about the meaning of hedonic damages." *Id.* at 1244. The Tenth Circuit reasoned that hedonic damages as a concept, namely that "the value of an individual's life exceeds the sum of that individual's economic productivity," was uncontroversial, but that the theory "becomes highly controversial when one

attempts to monetize that portion of the value of life which is not captured by measures of economic productivity." *Id.* at 1244-45. Thus, the Tenth Circuit declined to reach the issue of whether studies purporting to quantify hedonic damages were admissible, deciding only that it was not an abuse of discretion to allow testimony on the "definition of loss of enjoyment of life." *Id.* at 1245.

Having reviewed the expert report and the case law, the court finds the approach taken in *Smith* to be the most persuasive. Dr. Smith stated in his deposition that hedonic damages represent "the loss of the ability to derive value and satisfaction from your life separate and apart from the value from working, whether it[ is] a full-pay occupation or household occupation. . . . [It is] the value of one's being, separate and apart from the economic worth of one's doings." Smith Dep. at 31:15-22. In Jack Richman's case, Dr. Smith opines that ascertaining the value of life requires consideration of Jack Richman's leadership role in the community, his love of music, and his environmental activism. *See* Smith Report, interview with Marcella Richman (Mar. 29, 2005). The court finds such testimony to be relevant and that it will assist the jury in determining an appropriate figure for damages. Thus, Dr. Smith may testify as to the concept of hedonic damages. However, Dr. Smith's opinion on the dollar amount of Jack Richman's hedonic damages is not sufficiently reliable or helpful to the jury and is, therefore, inadmissible. *See* Smith Report at 4; *Ayers*, 887 F. Supp. at 1064 (concluding that expert testimony based on shaky empirical evidence could not assist the jury). The jury, given an explanation about the concept of hedonic damages and information on Jack Richman's life, will be able to exercise its fact-finding function to determine the appropriate measure of damages. Therefore, the motion is granted as to testimony on damages suffered by family members of Jack Richman and as to the

monetary value of Jack Richman's hedonic damages, and denied as to expert testimony on the concept of hedonic damages.

D.       **Motion *In Limine* No. 4 To Exclude Reference To Indemnification By Cook County And Reference To Defense Counsel As "State's Attorneys" [161]**

The defendants seek to bar the plaintiff from referring to the fact that the defendants may be indemnified by the County of Cook for damages. *See* Fed. R. Evid. 411. The plaintiff agrees not to raise the issue of indemnification. The defendants also seek to bar all references to their counsel as "Assistant State's Attorneys" or similar, because it would allow the jury to infer that indemnification is available. The likelihood of such an inferential leap seems slight. Additionally, the court needs to be able to examine the jurors during *voir dire* for bias and may need to refer to the lawyers' affiliation to do so effectively. *Cf. Sircher v. City of Chicago*, No. 97 C 6694, 1999 WL 569568, at *1 (N.D. Ill. July 28, 1999) (allowing a motion to exclude references to "corporation counsel" in part because the court "never refers to any lawyer's law firm or other affiliation" during *voir dire* or introductions). The court notes, however, that normal courtroom etiquette requires reference to counsel as "Mr." or "Ms." and normal courtroom etiquette is expected and will be enforced in this case. Therefore, the motion is granted as to the issue of indemnification and denied as to the remainder of the motion.

E.       **Motion *In Limine* No. 5 To Limit Testimony of Patrick McGahan [162, 174]**

The defendants seek to bar the plaintiff from offering certain testimony by Patrick McGahan, a paramedic with Skokie Fire Department, on the grounds that it is inadmissible hearsay, irrelevant, and unfairly prejudicial. *See* Fed. R. Evid. 401, *id.* 403, *id.* 802. The testimony at issue is a statement by an unnamed declarant that Jack Richman "collapsed and fell to the floor." The plaintiff argues that: (1) she is not offering the statement for its truth; in fact, to the contrary, she is offering it to show an attempted cover-up of the truth; and (2) the

9

statement is relevant because it was said by one of the defendants. In light of the undisputed fact that Jack Richman did not simply "collapse," but rather fell to the ground during a struggle with deputy sheriffs, the statement, by definition, is not hearsay. *See id.* 801(c) ("'Hearsay' is a statement . . . offered in evidence to prove the truth of the matter asserted."). However, the statement is relevant only if it was made by a defendant, in which case it may tend to prove that that the defendant was attempting to cover up the actual events. The motion is denied, on the condition that the plaintiff can first establish that one of the defendants made the statement. The statement should not be referred to in opening statements.

**F.      Motion *In Limine* No. 6 To Exclude Testimony of Prior Employment [163]**

The defendants move to bar as irrelevant any testimony regarding the defendants' prior employment, arguing that by such evidence, the plaintiff may attempt to show that the defendants were unqualified to be deputy sheriffs. *See* Fed. R. Evid. 401. The plaintiff states that she does not intend to introduce evidence for that purpose, but may introduce evidence as to past employment in law-enforcement/security jobs to rebut any suggestion that the defendants were ignorant of how to handle Jack Richman properly. Such evidence could be relevant, but the court cannot determine whether it is absent a proper foundation as to the similarity of jobs and responsibilities. The plaintiff has failed to provide the court with sufficient information to make a preliminary determination. The motion is granted without prejudice.

**G.      Motion *In Limine* No. 7 To Exclude Reference The Lawsuit of Otto Cesario [164]**

The defendants seek to bar testimony, evidence or argument regarding a lawsuit filed by Otto Cesario ("Cesario") against Jack Richman. They argue that it is irrelevant and unfairly prejudicial. *See* Fed. R. Evid. 401, *id.* 403. This is a curious dispute, because the merits of the motion depend on Cesario's relationship with the defendants, which is disputed. The plaintiff

says he is the "deputy chief," with supervisory responsibility over the defendants and that the lawsuit suggests bias on the part of Cesario's supervisees. The defendants contend that Cesario is a courthouse janitor. The court is at a loss to understand how the parties can have such variant views of Cesario's employment after having taken his deposition and having had access to defense records. If the plaintiff is right, a lawsuit by the defendants' supervisor could tend to show a basis for animus toward Jack Richman, which is relevant to an Eighth Amendment claim. If the defendants are right, the inference that the defendants were punishing Jack Richman because of the lawsuit strains credulity because no adequate connection between the defendants and Cesario has been shown. The motion is granted without prejudice. The evidence will be admissible only if the plaintiff establishes that: (1) Cesario was a "deputy chief" with supervisory responsibilities over the defendants; and (2) the individual defendants had reason to know of the lawsuit before Jack Richman died.

**H.     Motion *In Limine* No. 8 To Exclude Testimony Regarding Mosquito Meetings [165, 175]**

The defendants seek to bar any testimony, evidence or argument, specifically videotapes, regarding North Shore Mosquito Abatement District ("NSMAD") meetings in which Jack Richman participated. They argue that any comparisons between the manner in which sheriff's deputies dealt with Jack Richman at the meetings and how they dealt with him at the courthouse is irrelevant to a Fourth Amendment claim and would be unfairly prejudicial because the situations are not analogous. *See* Fed. R. Evid. 401; *id.* 403. The argument is unpersuasive because cross examination provides the defendants with an adequate opportunity to explore these issues.

Jack Richman's environmental activism and his past encounters with members of the Cook County Sheriff's Department could tend to show that the defendants held negative feelings

toward him because they had either encountered him before the incident in question or knew of his disruptive reputation from others. Such animus is clearly relevant to the plaintiff's Eighth Amendment claims. Therefore, providing that the plaintiff can prove that either the individual defendants were present at the NSMAD meetings or otherwise had knowledge of Jack Richman's past behavior at the NSMAD meetings, the motion is denied. The motion is denied as to evidence regarding Cesario's involvement in the meetings providing that the plaintiff proves that he was a "deputy chief" with supervisory responsibilities over the defendants.

**I.        Motion *In Limine* No. 9 To Exclude Reference To Disciplinary Records [166]**

The defendants seek to bar evidence regarding the disciplinary history of defendant Maury Gantman, specifically that he engaged in secondary employment without authorization, that he falsely represented that he was on official business in order to carry a firearm aboard a plane while acting as a bodyguard, and that he made false reports that his basement was flooded and that a relative had died thereby abusing the sick leave policy of the Sheriff's Office. They argue that such evidence is barred by Federal Rule of Evidence 404(b). In response, the plaintiff contends that the evidence is relevant for impeachment of defendant Gantman's credibility. The defendants reply that the plaintiff must then proceed under Rule 608(b). The court agrees; plaintiff may introduce evidence, pursuant to Rule 608(b), as to defendant Gantman's misrepresentations. The defendants' argument that all the defendants will be smeared by the impeachment of one defendant's credibility is unpersuasive; the plaintiff has a right to impeach, and the defendants have a right to rehabilitate. Therefore, the motion is denied.

**J.        Motion *In Limine* No. 10 To Bar Lay Testimony Regarding Jack Richman's Physical Condition [167]**

The defendants seek to bar evidence of non-expert opinions, accounts and purported knowledge of Jack Richman's physical condition, especially testimony by the plaintiff that her

son was "crippled." They argue that such opinions do not comport with requirements of Rule 701 because whether a person is "crippled" requires specialized scientific knowledge or would be based on inadmissible hearsay. The plaintiff contends that she intends only to testify as to her personal observations of her son's condition and that such observations comport with Rule 701. The court agrees and finds that even the lay opinion that her son was a "cripple" is admissible; the defendants ability to cross-examine the plaintiff provides them with sufficient safeguards to avoid jury confusion. Therefore the motion is denied.

K. **Motion *In Limine* No. 11 To Exclude Testimony Regarding the Defendants' Political Connections or Participation in Patronage Hiring [168]**

The defendants seek to exclude evidence on political connections or patronage, noting that no defendant procured employment by means of political patronage. In response, the plaintiff admits that the defendants deny having connections but seems to imply they are lying and then states that Cesario had connections to Calvin Sutker, who was involved in NSMAD, and argue that this is relevant to their Eighth Amendment claim. The connection is attenuated, at best, making it of little probative value. Given the "hot button" status of political patronage in Chicago, any such evidence has a high likelihood of being unfairly prejudicial. Therefore, given the lack of direct connection to the defendants, the court grants the motion pursuant to Rule 403.

L. **Motion *In Limine* No. 12 To Exclude Reference to Orders, Policies, and Training [169]**

The defendants move to exclude as irrelevant and unfairly prejudicial any testimony, evidence, argument or reference to the existence of, or standards set by, any Cook County Sheriff's Department general orders, policies or training procedures. *See* Fed. R. Evid. 401; *id.* 403; *Thompson v. City of Chicago*, 472 F.3d 444 (7th Cir. 2006). The plaintiff argues that the material is relevant to her Eighth Amendment claims and that the defendants' own experts will

rely on the same materials.  The defendants do not reply to these arguments; they simply reassert that *Thompson* bars such evidence and add that the materials are irrelevant because all *Monell*[6] claims have been dismissed.  For the reasons discussed in § A, *supra*, the court is unable to decide the motion with the information presently before it.  Therefore, the motion remains under advisement pending additional argument.

**M.**     **Motion *In Limine* No. 13 To Exclude Reference to Other Publicized Incidents [170]**

The defendants seek to bar evidence regarding other incidents involving the use of excessive force by law enforcement personnel because it would interject collateral matters and inflame the passions of the jury against them.  The plaintiff states that she does not intend to introduce such evidence, unless the defendants open the door.  Therefore, the motion is granted by agreement.

**N.**     **Motion *In Limine* No. 14 To Exclude Reference to an Officer Code of Silence [171]**

The defendants seek to bar evidence that officers generally lie, cover-up, or otherwise maintain a "code of silence" to protect fellow officers.  They argue such evidence is irrelevant and unfairly prejudicial.  *See* Fed. R. Evid. 401; *id.* 403.  The plaintiff states she has no intention of offering generalized evidence on a "code of silence," but will offer evidence on any cover-up in this case.  In reply, the defendants argue that the plaintiff did not allege a cover-up in her pleadings and her evidence is insufficient.  The plaintiff has a right to present evidence on a cover-up as it is relevant to the defendants' credibility and whether this was asserted in the pleadings is irrelevant.   The defendants' argument as to the sufficiency of the evidence is better addressed during cross-examination and closing arguments than in a motion *in limine*.  Therefore, the motion is granted in part by agreement as to generalized evidence on a "code of

---

[6] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

silence" and is denied in part as to evidence of a cover-up or "code of silence" specific to this case.

### III. CONCLUSION

For the reasons stated above, motions *in limine* nos. 6, 7, 11, and 13 are granted, motions nos. 2, 5, 8, 9, and 10 are denied, motions nos. 3, 4 and 14 are granted in part and denied in part, and motions nos. 1 and 12 remain under advisement. All rulings are without prejudice.

ENTER:

\_\_\_\_/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: June 24, 2008